UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT W. MARION, III, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal  No. 04- 94-P-H |
| | ) | |
| | ) | Civil No.   08-60-P-H |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |

**RECOMMENDED DECISION ON 28 U.S.C § 2255 MOTION**

Robert Marion has filed a 28 U.S.C. § 2255 motion seeking relief from his federal

sentence.  Marion was sentenced to 168-months in prison as a Career Criminal and he wants to

be resentenced, suggesting a five-year term because he was "offered" this term by the prosecutor

in exchange for his guilty plea.  Marion presses three ineffective assistance claims and one claim

relying on the fact that since his sentencing he has successfully challenged one of his state court

convictions used to enhance his federal sentence. In a supplement Marion also indicates that he

wishes to use this proceeding to challenge yet another of his predicate offenses, claiming he was

not provided with any opportunity for consulting counsel. Marion also requests that the Court

take into consideration his commitment to his rehabilitation since his incarceration.[1] Despite the

fact that he is proceeding without the assistance of post-conviction counsel, Marion has

presented the court with a memorandum that cogently forwards his claims.  However, even

though he has done an exemplary job in presenting his claim, Marion is not entitled to 28 U.S.C.

§ 2255 relief.

---

[1]        (See Sec. 2255 Mem. at 30; Doc No. 1-4; Doc. No. 19.)

### Discussion

#### *Ineffective Assistance Claims*

Marion faults his attorney on three grounds.  First, he claims that his attorney did

not advise him that he could be sentenced as a career offender and that he allowed

Marion to plead guilty on the understanding that, as a consequence of his plea agreement,

he would receive a five-year sentence.  Second, he faults his attorney for not raising and

preserving "relevant sentencing issues" that would have prompted this Court to vary from

the United States Sentencing Guideline range post- United States v. Booker, 543 U.S.

220 (2005).  And, third, counsel failed to file a timely petition for certiorari review by the

United States Supreme Court.  With respect to this last ineffective assistance claim,

Marion points to his attorney's admitted negligence on this score and his reprimand by

the Maine Board of Overseers of the Bar.  (See Doc. No. 1-5.)

#### *Ineffective Assistance Standard*

The First Circuit summarizes the standard for analyzing ineffective assistance claims

stemming from a federal prosecution as follows:

> "The essence of an ineffective-assistance claim is that counsel's
> unprofessional errors so upset the adversarial balance between defense and
> prosecution that the trial was rendered unfair and the verdict rendered suspect."
> Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). In order to prevail, a
> defendant must show both that counsel's representation fell below an objective
> standard of reasonableness and that there exists a reasonable probability that, but
> for counsel's unprofessional errors, the result of the proceeding would have been
> different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). In other
> words, a defendant must demonstrate both seriously-deficient performance on the
> part of his counsel and prejudice resulting therefrom. …
> Although the Supreme Court in Strickland discussed the performance
> prong of an ineffectiveness claim before the prejudice prong, the Court made
> clear that "there is no reason for a court deciding an ineffective assistance claim to
> approach the inquiry in the same order or even to address both components of the
> inquiry if the defendant makes an insufficient showing on one." Id. at 697. As the

2

> Court noted: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

United States v. De La Cruz, 514 F.3d 121, 140-41 (1st Cir. 2008).

With respect to Marion's challenges, I emphasize three tenants of 28 U.S.C. § 2255 review. First: "Under the first prong of Strickland, there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689).  Second, "counsel was under no obligation to raise meritless claims.  Failure to do so does not constitute ineffective assistance of counsel." Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990) (citations omitted).  And, third, "when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's [criminal proceedings], the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

**Decision to plea and career offender status**

With regards to his first challenge to his attorney's performance, Marion makes it clear that his is not a case in which he would not have pled guilty had he realized his sentencing exposure; he indicates that "the fact of guilt is not being disputed, just the sentencing disparity that was caused by the failure to notice the defendants of his status as a career offender."   (Sec. 2255 Mem. at 19.)[2]  In other words, Marion does not contend that "there is a reasonable

---

[2]      In a letter to Judge Hornby after his guilty plea and before his sentencing, Marion did represent that his attorney had told him prior to his plea that his Basic Offense Level would not exceed 26 and that his sentencing range would be 63 to 78 months.  (Crim. No. 04-94-P-H, Doc. No. 27 at 1.)  Then on September 30, 2004, he received correspondence from his attorney that he was being charged as a career offender.  (Id.) In his letter Marion opined:  "I was never informed or lead to believe that there were any chances or reasons for me to receive an

3

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). It does seem that Marion believes that upfront knowledge of his career offender status may have prodded his attorney to negotiate a more favorable plea agreement.[3]  As the United States points out, there are two flaws

---

additional punishment or increase added onto the amount of time that I originally agreed upon.  If I would have known this, I would have never pleaded guilty to the [aforementioned]  charges." (Id.)  That letter was docketed on December 14, 2004.  On December 20, 2004, defense counsel sent a letter to Judge Hornby indicating that he had discussed Marion's letter with Marion and that Marion was not requesting to withdraw his guilty plea but was trying to preserve his issues for sentencing.  (Id., Doc. No. 28.)

[3]      At the change of plea hearing the Court described Marion's sentencing exposure as being at least five years and as much as 40 years.  (Rule 11 Tr. at 8.) The Court also explained:

    If you turn to page 2 paragraph 2A, actually look at both 2A and 2B at the same time. Do you understand that in these paragraphs you and the government are agreeing about certain recommendations to the Court about how the guideline sentence should be calculated but those recommendations are not binding on me. The determination of sentence stays with me as the judge, provided I accept those recommendations or if the sentence turns out to be more than you hoped for, you are still bound to your guilty plea and have no right to withdraw it. Do you understand?
    A. Yes.
    Q. And turning your attention to page 3, paragraph 3. Do you understand that in paragraph 3 you are giving up the right in paragraph A to appeal your conviction and your guilty plea. And in paragraph B you are giving up the right to appeal your sentence so long as it does not exceed the number of months provided for in an offense level 26 of the guidelines. Do you understand that?
    A. Yes.
    Q. So although you might otherwise have a right to appeal your sentence ultimately, at that level you have no right to appeal your sentence. Do you understand that?
    A. Yes.
    Q. The sentence in this case will be governed by applying the Sentencing Commission Guidelines. Have you and your lawyer talked about how those guidelines may affect your sentence?
    A. Yes.
    Q. Do you want a chance to talk to your lawyer?
    A. Yes.
    Q. Go ahead.
    Do you want to change your answer to any question or you're all set?
    A. I'm all set.
    Q. I cannot determine what the guideline sentence is until I read a presentence report that the Probation Officer will report and then I will give your lawyer and the prosecutor an opportunity to challenge the facts that the probation officer reports. Once I do determine what guideline applies, I still have the authority, in some circumstances, to impose a sentence that is more severe or less severe than what the guideline calls for; do you understand?
    A. Yes.
    Q. Now, the United States Supreme Court has recently decided a case, Blakely versus Washington that may restrict some guideline adjustments, particularly those that increase a sentence. But at this time we do not know what the final effect of that Supreme Court decision will be on that sentence. Do you understand?
    A. Yes, I do.

with such a theory.  First, there is no evidence that the prosecution would have made a more favorable offer to the defense if it knew the extent of Marion's criminal history.  Indeed, the converse seems more likely.  Second, even if the prosecution could have been persuaded to make a more lenient recommendation as part of the plea deal, this recommendation would not have been binding on this Court.  The Court had an independent obligation to assess Marion's sentencing exposure and arrive at an appropriate sentence through the prism of the sentencing guidelines.  The sentencing transcripts make it clear that this Court did conscientiously undertake this independent analysis based on the PSI and the arguments of counsel for both sides. The discussion of Marion's second ineffective assistance claim directly below bears this out.

The bottom line is that Marion was encumbered by this criminal history when he first became entangled in this federal prosecution.  Given that Marion is not disputing his guilt of the underlying federal charge – and therefore is not suggesting that he might have been able to go to trial and gain an acquittal – this criminal history was going to be reflected in the PSI no matter what else happened.[4]   There was little he or counsel could have done to change the stark reality

---

Q. Ordinarily I would tell you that you and the government have a right to appeal the sentence that I impose but as I just said, in your plea agreement if it is below a certain level you don't have a right to appeal. You will be required to actually serve in a jail or prison term all of the time I impose except for good time deductions. You will not be permitted to serve any part of it on parole. Do you understand?
A. Yes.
Q. Aside from the written plea agreement that we have been talking about, has anybody made any other promise to get you to plead guilty?
A. No.
Q. Has anybody made a promise to you as to what kind of sentence I will impose?
A. No.
Q. Has anyone made any promise to you as to what the prosecutor's sentencing recommendation will be beyond what is in the plea agreement?
A. No.
Q. I ask you finally, do you still want to plead guilty to the charge in the information?
A. Yes.
(Id. at 13-16.)

[4]       Despite Marion's claim that there should have been more discovery on this issue prior to the plea decision, this is conduct he could well have described to counsel prior to the plea.

of the PSI because of Marion's own prior criminal conduct.  With respect to counsel's advice and performance under the <u>Strickland</u> standard, the decision to plead guilty did bring him the concrete benefits of the bargain – the government's limitation on his responsibility for drug quantity and the acceptance of responsibility point deduction award.  And the Court agreed to a further departure under U.S.S.G. § 4A1.3(b)(3)(A).

**Possible sentencing and appellate challenges**

In articulating his second challenge to counsel's sentencing performance Marion focuses on his belief that the Court could have varied further from the United States Sentencing Guideline range. (Sec. 2255 Mem. at 20.)  He believes that his attorney did not sufficiently advocate for him towards this end.  The record definitively rebuts this assertion.

Counsel submitted a cogent sentencing memorandum to the Court in which he argued that the Court had a broad discretion in the wake of <u>Booker</u>.  (Crim. No. 04-94-P-H, Doc. No. 34 at 1-5.)  The tenor of this argument in many ways anticipated the guidance of <u>Gall v. United States</u>, __ U.S. __, 128 S.Ct. 586 (2007) and <u>Rita v. United States</u>, __ U.S. __, 127 S.Ct. 2456 (2007).  Counsel pointed out that Marion had a troubled childhood; urged the Court to recall that the parties did not suspect that he was a career offender at the time of the plea; stressed that his three potential qualifying sentences resulted in less then 89 days in jail; and noted that the advisory sentencing range lowest sentence of 188 months was 26 times his previous adult sentences served.  In sum, counsel argued:

> that the conviction history of Robert Marion that may make him fit the criteria for career offender and the specific circumstances of[] those convictions overstates the seriousness of his adult criminal history and therefore, an alternative sentence should be imposed.  The advisory sentencing range, absent a career offender designation, would be 70 to 87 months based upon an offense level of 23 (see PSI ¶ 17) and a criminal history IV (see PSI ¶ 42).  This sentencing range (70-87) reflects the seriousness of the offense, promotes respect for the law, provides just

6

punishment, affords adequate deterrence, protects the public, and effectively
provides the defendant with needed educational and vocational training and
medical care. …
    This court has the discretion to sentence Robert Marion to the sentence
proposed above under the unique circumstances of this case.

(Id. at 4-5.)  Counsel also objected to Marion's career offender designation on the grounds that

the United States did not plead the predicate offenses in the complaint and Marion had not

admitted the necessary specific facts.  (Id. at 5.)[5]  He also lodged an attack on the

characterization of the substance in the charged offense as "crack."  (Id. at 6-7.)

    The sentencing recommendation of the United States Probation Officer was 188-months

(Sentencing Rec. at 2.)  At the beginning of the sentencing hearing the sentencing judge

confirmed with Marion that "the only issues that remain in dispute, in connection with imposing

sentence, are whether you should be treated as a career offender and whether I should depart

downward for overrepresentation of criminal history, as well as the implications of the recent

Supreme Court decision in the Booker case."  (Sentencing Tr. at 4.)

    For its part, the United States argued for a stiff treatment of Marion despite his relative

youth:

    Your Honor, despite the defendant's youth, he has managed to amass an
abysmal criminal record, a record that consumes approximately seven pages of
the probation officer's presentence investigation report. He is now a 23 year old,
and he has 19 separate and distinct convictions, almost one conviction for every
year that he has been alive.
    It is clear that he needs a wake-up call. And it's also equally clear that
society needs Mr. Marion to have a wake-up call.

(Id. at  4-5.)  The prosecutor pointed out that while only two were needed,  there were three

qualifying offenses identified in the PSI apropos the career offender determination, Paragraphs

---

[5]      See Almendarez-Torres v. United States, 523 U.S. 224 (1998).

7

32, 33, and 36.  (Id. at 5--10.)[6]  "The government acknowledges, your Honor," the prosecutor

opined, "the defendant's youth makes a career offender designation particularly tragic, it is

however by no means inappropriate given his criminal history."  (Id. at 10.)  The United States

urged imposition of a sentence as recommended in the PSI.  (Id. at 11.)

     With regards to defense counsel's efforts to persuade the court, he presented a carefully

thought-out argument concerning how the uniformity of sentences for career offenders may not

properly account for the reality that many offenders will plead to a felony charge for time served

when the offense conduct is really misdemeanor in nature.  (Id. at 11-15.)   He explained:

> The point I'm making is that it's not an uncommon practice for people to
> trade off more serious convictions by classification in order to avoid jail. I would
> note in this case Mr. Marion pled to one felony offense, a 30 days in jail. He pled
> to another felony offense for a $500 fine. Those were offenses that I suggest if he
> were in the State of Maine would not have been felonies, at least in my experience
> would not have been felony convictions. That is not to excuse the conduct, that is
> not what I'm doing by way of explanation. I'm trying to point out the fact that he
> might be designated career offender should not be the end of the inquiry in
> consideration by the Court.
>      As the Court has indicated in previous sentencing today, the Sentencing
> Guidelines are now advisory. They are factors to be considered and I would ask
> the Court to consider this in determining whether Mr. Marion needs to have a
> career offender guideline sentencing range in his sentence to meet the specific
> needs for the sentencing criteria under the law.
>      Mr. Marion's family is here - his Mom is here. His father has come and
> you received their letters. His daughter is here in the courtroom.
>      I got to know Robert only through his incarceration in county jail but I
> have found him during that period to be respectful both to me and to the
> institution. He has been a model individual at the jail. I know under our old
> system there was no provision within the Sentencing Guidelines to be able to look
> at that type of information, when determining departures. But I think, again, it's a
> relevant factor, judge, because it speaks for potential to rehabilitation.
>      We have a young man here who in his adult life has spent 7 months, 59
> days less good time in jail and the proposed sentence under the federal sentencing
> guidelines, be they advisory or career offender, is 188 months, that is 26 or 27
> time increase over his previous sentence.

---

[6]      The prosecutor indicated that there was a fourth, Paragraph 37.  (Id. at 6, 9-10.)  In a conference in chambers in the midst of the sentencing the parties clarified that this Paragraph 37 would not be considered a qualifying offense.  (Id. at 21-23.)

I just think under that circumstance it is unreasonable. I believe this is a young man that has worth, he has potential for rehabilitation; he is extremely young. He is a product to a large degree of troubled adolescence. He is not excusing his conduct based on that but I certainly think it's an issue the Court needs to look at in determining how he got to where he is and, again, in assessing his rehabilitative potential.

He submitted to you indicators that he has not been idled with his time in jail. He has put that time to good use and worked on the issue that I think has been the driving factor behind his criminality, that is his significant substance abuse history.

At the same time I would ask the Court to look at the offense in this case, an allegation of a single sale of an exchange of grams of cocaine base. And he is not an individual who is alleged to have been involved in a big organization or leader or organizer, or being involved in all of those other factors that would necessarily drive us to a large sentence, basically the career offender aspect that calls for this quantum jump in his sentence.

(Id. at 15-18.)  After Marion and his father spoke, counsel urged in conclusion:

This is a young man that is an intelligent individual whom, if he makes the right decision has a lot to contribute to himself and to his family and to society.

I don't believe a 15 year sentence is going to necessarily enhance the goals of society, given his adult history. The chances that are available to him might help and I would urge the Court to depart from the advisory guidelines recommended or put forward in this case. Thank you.

(Id. at 21.)

The Court delivered the following sentencing assessment:

I previously studied the revised presentence report as well as all the materials that I listed at the beginning of the hearing.

And now that I heard from the lawyers, I heard from the defendant's father and I heard from the defendant himself, I will make my findings of facts and conclusions of law and impose sentence. If I've not previously done so, at this time I order that the plea agreement be accepted.

Following the Supreme Court decision in Booker, the first step that I must make is to determine what a guideline sentence would be before I proceed to consider whether that is the appropriate sentence under the factors set forth in sections 3553(a). And so, with that in mind I find the facts as set forth in the revised presentence report, and I find that the defendant does have three predicate qualifying convictions that make him a career offender, specifically those set forth in paragraphs 32, 33, and 36.

….

9

The defendant did plead guilty to distribution of five grams or more of cocaine base; therefore, the penalty provision of the statute with maximum sentence of 40 years yields a base offense level of 34 under the career offender provision, 4B1.1(b)(B) with a 3 level reduction for acceptance of responsibility and the criminal history is category 6 by virtue of the career offender provisions.

Those are the guideline findings before I consider either departure under the guidelines or a variation under the guidelines by way of <u>Booker</u>….

…

Again, following the Supreme Court's admonition, I first must look at this under the guideline context, which is to say consider any available departures under the guidelines. And the defendant through his lawyer is requesting that I depart. Any such departure would be under 4A1.3(b)(1), and would be limited under 4A1.3(b)(3)(A)to one level. The standard for that departure is as follows:

I'm reading from the guidelines.

If reliable information indicates that the defendant's Criminal History Category substantially overrepresents the seriousness of the defendant's criminal history, or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

Let me say first of all that I do not find that reliable information shows that the category overrepresents the likelihood that this defendant will commit other crimes. The lengthy list of crimes for this young man certainly suggests a great risk of further criminal behavior.

The more difficult question is whether the Criminal History Category or where reliable information indicates that the Criminal History Category substantially overrepresents the seriousness of the defendant's criminal history.

If I look at the criminal history of this defendant as a whole, the Sentencing Commission Guidelines would lead me to assign points and values to come up with a Criminal History of category 4 but for the career offender provision. The career offender provisions, of course, depend upon the predicate offenses which are the three convictions I have mentioned.

And let me first of all speak to the conviction referred to in paragraph 36.

The second one, possession of a class B substance of cocaine with intent to distribute. That certainly is a classic predicate conviction.

And so the only question in terms of departure are the other two which is to say paragraphs 32 and 33, which are counted as crimes of violence for purposes of the predicate offender analysis.

The government has pointed me to the police report descriptions of what happened that led to the charges and the defendant's guilty plea. In contrast, the defendant points me to the penalties that the sentencing judges imposed. And the reason for the two differing views is the government points to me the seriousness of the underlying conduct, as it has described it derived from the presentence report summary of the underlying events. Whereas the defendant sees it from the point of view of the sentence that was imposed by the sentencing judge as reflecting rather less significance or seriousness to the conduct.

10

The guideline standard is reliable information. Whether reliable information indicates substantial overrepresentation, it's a close question but I have concluded that the reliable information is the sentencing information and that does reflect overrepresentation of the seriousness of the criminal history as it affects career offender status. The police reports are there for whatever weight they have to be sure, but they are not as reliable as the sentencing judge confronted with a prosecutor and with a defendant in terms of what happened and then the sentence imposed. And here in paragraph 32 it was a suspended sentence until probation was violated, and then it ended up being 30 days that originally was imposed.

Paragraph 33, there was no jail time at all but solely a $500 fine. I conclude that those two predicates are somewhat unusual in terms of the predicate offenses for career offender status in that they are less serious than the typical predicate offenses that this Court sees for career offender status. Again, I want to make clear that I'm looking at the predicate offenses because I believe that the context in which to consider for overrepresentation and seriousness, were it not for the career offender status, the guidelines themselves would rank criminal history at category 4. So, within the guideline analysis I will and do depart 1 level downward on criminal history to a category 5.

I then turn to consideration of the statutory factors under section 3553(a) following the <u>Booker</u> instructions, I look at the nature and circumstance of the offense, it's a serious offense; the history and characteristics of the defendant. Unfortunately, this young man has a lengthy criminal history. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment, those all call for serious sanctions, to afford adequate deterrence to criminal conduct, to protect the public from further crimes by the defendant, those factors also call for serious punishment. To provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner. The only relevant factor there is the needed correctional treatment.

The kinds of sentences available: Sentences provided for under the guidelines, which I have already discussed, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution. There is no restitution at stake here.

I conclude the need to avoid sentence disparities calls for a sentence close to the guideline sentence which is, after all, premised on the idea of uniformity. And I have already used the guidelines in terms of the one level downward adjustment on the criminal history. For all of those reasons I conclude that a guideline sentence, and by guideline sentence here I mean a sentence calculated under the guidelines including guideline provisions for departure. I conclude that that is the appropriate sentence and I therefore will sentence accordingly.
•••••

Mr. Marion, it's a long sentence that I'm going to impose. I'm going to sentence you at the bottom of the range as I have calculated it, which will be, with

11

the one level departure, the range is 168 to 210 months. Your sentence will be 168 months instead of 188 months. Your lawyer has done a good job p[ersuading] me to make that decrease but its still a long sentence.

You are a young man but there is no getting around the fact that that is a long time. I've listened to you carefully as you spoke, and obviously you and I had interchanges before. I'm impressed with the seriousness and attitude that you are bringing today, and the past times I have seen you. The real question for you, Mr. Marion, is whether you can preserve that attitude in the future. Because there is a future, even though you're going to be in prison, you will come out and the question is: Are you going to come out to stay out or are you going to come out and just turn around and go back in. Unfortunately, many of the people that I see for sentencing are people that come back again and again and again.

(Id. at 23-30.)

The sentencing transcripts bear out that the prosecution, defense counsel, and this Court were all concerned about the implications of Marion's criminal history and the concerns related to his career offender exposure. The above cited record also is a testament to defense counsel's efforts to persuade the Court to exercise its Booker discretion to the greatest extent possible. The Court settled on a sentence lower than that recommended by the PSI and the United States, although it did not go so far as urged by the defense.  It is also of some moment that the Court expressed its opinion that Marion's attorney was a strong advocate for him on this issue. See McGill, 11 F.3d at 225.[7]

---

[7]     In this second ground Marion also seems to suggest that counsel should have distinctly emphasized Marion's mental health concerns as ground for a further Booker variance.  (Sec. 2255 Mem. at 21-22.)  As the United States points out:

> To the extent Marion argues [in]  his memorandum that counsel should have focused more at sentencing on Marion's purportedly diminished capacity, USSG §5K2.13 (p.s.) makes clear that a departure is not authorized if "the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants" or "the defendant's criminal history indicates a need to incarcerate the defendant to protect the public ...." USSG §5K2.13.  Here, however, Marion admitted that his crime was the result of his substance abuse and his disturbing history of 18 convictions - almost one conviction per year – showed a need to incarcerate him in order to protect the public. See id. Counsel had no duty to argue in favor of a diminished capacity departure when the claim was so clearly doomed to fail. See United States v. Hart, 933 F.2d 80, 83 (1st Cir. 1991)

(Govt.' Opp'n Mem. at 20.)  As this Court is well aware, defense counsel stressed to the Court that Marion deserved some leniency because of his troubled history and the resulting mental stress.  Marion points to his ability to secure a dismissal of one of his Massachusetts offenses (discussed below) but there is no evidence that his dismissal was

Vis-à-vis any claims against his attorney for his performance on appeal, the First Circuit

Court of Appeals summarily ruled on Marion's direct appeal as follows:

> The sentence is <u>affirmed</u>.  Although a "<u>Booker</u> variance" below 168 month might have been plausible, we find reasonable the court's decision – after it had departed downward for the "somewhat unusual" aspects of this career offender record – to sentence appellant at the bottom of the advisory guideline range.  The departure itself shows that the court distinguished appellant from other career offenders.
> As for appellant's drug of admission, cocaine base, his sentencing range was triggered by the relevant statutory maximum and the career offender guideline.  It did not depend upon a finding that appellant was responsible for crack.  <u>See</u> <u>United States v. Richardson</u>, 225 F.3d 46, 50-51 (1st Cir. 2000).

(<u>Id.</u>, Doc. No. 46.)

With regards to this aspect of Marion's second 28 U.S.C. § 2255 claim, the United

States summarizes:

> Turning to counsel's performance on appeal, as the record also shows, counsel fully briefed the possible issues that Marion's appeal presented. These included the claim that a "<u>Booker</u> variance" below 168 months might have been plausible in light of the "somewhat unusual" aspects of Marion's Career Offender record; the court's purported failure to distinguish Marion from other career offenders; and his challenge to being sentenced on the basis of cocaine base. The fact that the appellate court found none of these claims to have merit does not mean that counsel was deficient in the way he presented them or in deciding not to present other issues. Indeed, even in his §2255 petition, Marion has failed to identify what issues counsel could have raised that might have produced a different result on appeal. <u>See</u> <u>Strickland</u>, 466 U.S. at 687.

(Gov't Opp'n at 20.)  To the extent that Marion believe that counsel could have presented

different or additional arguments on direct appeal his 28 U.S.C. § 2255 pleadings are far

too conclusory to merit further action.  <u>See</u> <u>Ellis v. United States</u>, 313 F.3d 636, 641 (1st

Cir. 2002).

---

premised on his mental condition, much less evidence that Marion's attorney on this federal charge had credible evidence on mental health issues to advance as to the drug transaction leading to his federal arrest.

### Failure to file a petition for certiorari review

In his final attack on counsel's performance, Marion faults his attorney for not complying with his express request (and the First Circuit Court of Appeals rules) to file a petition for certiorari review with the United States Supreme Court.  Given the evidence he submits there is no question that counsel was negligent in not taking this step. However, Marion disowns the position that this alone is a grounds for 28 U.S.C. § 2255 relief but argues that this admitted negligence is evidence of a more general inattention to his case.  (Sec. 2255 Mem. at 24.)  Although this failure was an unprofessional oversight, for which counsel was reprimanded, this lapse of Marion's attorney does not translate into Strickland prejudice, particularly in view of the fact that the First Circuit determined that Marion's appellate claims deserved only a brief discussion and that the Supreme Court denied Marion's pro se petition for review. Nor is this admitted slip, standing alone, sufficient evidence that his attorney performed below the Strickland standard with respect to all the criminal proceedings at the trial and appellate phases.  The record is that counsel acted as a conscientious and persistent advocate for his client in all other respects.

### *Claim That Marion's Sentence is in Violation of the Constitution Because it is Based on a Prior Conviction that has Been Vacated Prior to Filing this § 2255*

Marion's single non-ineffective assistance claim turns on his evidence that he successfully moved to withdraw his guilty plea in 0261 CR 1103, the case was set for trial, and the Commonwealth of Massachusetts successfully moved to dismiss the complaint.  (See Doc. No. 1-6.)  The United States' lead assault on this assertion is that Marion did not exercise sufficient due diligence in lodging his attack on this conviction under Johnson v. United States,

14

544 U.S. 295 (2005).  Given that this motion is timely under 28 U.S.C. 2255(f)(1), I am skeptical of this position.  Obviously Marion moved on his prior conviction once he learned that it had substantially impacted his federal sentence;  he had no real reason to act before that time.  To have accomplished that within the statute of limitations for his § 2255 federal petition demonstrates a degree of diligence on his part.  However, there are still two predicate offenses that could form the basis of his career offender status  and that were expressly identified as such by this Court, see U.S.S.G. § 4B1.1(a); United States v. Torres, 541 F.3d 48, 50 n.2 (1st Cir. 2008), so this success alone is not a game changer.   If the sentencing judge believes that a further reduction in sentence would have occurred had there been only two instead of three predicate offenses justifying Marion's career offender status, then this record would perhaps provide a basis for 28 U.S.C. § 2255 relief in the form of resentencing.  However, the prospect of this relief does not appear obvious or apparent to me from the record alone.

**June 16, 2008, Supplement**

However, in his reply memorandum Marion offers a somewhat revisionist characterization of his "main" § 2255 argument in asserting that he was erroneously characterized as a career offender because his lawyer failed to investigate the validity of his prior convictions.  (Reply Mem. at 1.)  He also suggests that one of the remaining predicate offenses "is also unconstitutional because it was obtained in violation of defendant[']s right to counsel." He further indicates that he "has submitted a sworn affidavit testifying to the fact that he was deprived of his right to counsel, and the government has failed to produce any evidence to the contrary."  (Id.)  This seems to be a reference to a filing entitled: 'Defendant[']s Motion to Supplement § 2255 Motion."  (Doc. 9 at 1; see also Doc.  11-2.)   Therein Marion represents as follows:

> Defendant states that his assault and battery case (Docket 0116CR00624) Date of disposition 07/10/2001 was obtained in violation of the defendant['] s right to coun[sel]. At **NO TIME** during the course of the state courts proceedings did defendant consult or meet with an attorney. Moreover, the state court failed to inform the defendant that he had a right to coun[sel]. Thus, the defendant was incapable of making an intelligent and informed decision to plead guilty in the state case. Defendant further requests an evidentiary hearing and appointment of coun[sel] so that he may prove that his prior state conviction was in fact uncounseled.

(Doc. 9 at 1.) This is the conviction that is reflected in Paragraph 33 of the PSI which represents that Marion <u>was</u> represented by court appointed counsel.

It seems that Marion intends here to set the stage for a <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963)/ <u>Daniels v. United States</u>, 532 U.S. 374 (2001) premised hearing on this conviction in the context of his 28 U.S.C. § 2255 proceeding. <u>See</u> <u>Johnson v. United States</u>, 544 U.S. 295, 300-01 ns.1&3 (2005). It being Marion's word against that of the PSI preparer's -- neither of which had independent substantiation for purposes of this 28 U.S.C. § 2255 proceeding -- I ordered the United States to supplement the record with a certified copy of the state court record upon which Paragraph 33 is predicated. The United States has filed a certified copy of the criminal record as ordered and that record indicates that an attorney was appointed. (Doc. 22 at 1.) This docket also reveals that Marion filed a motion to vacate or correct sentence on September 15, 2005. Of more importance, Marion filed a motion to withdraw his guilty plea/for a new trial on April 6, 2007, which was denied on April 24, 2007, and this order was affirmed on February 28, 2008. On this record Marion is not entitled to further proceedings in the context of the 28 U.S.C. § 2255 motion based on his self-serving representation that he did not have counsel vis-à-vis this predicate conviction.[8]

---

[8]     There is also the matter that, while this 28 U.S.C. § 2255 motion was timely filed as being within one year of when the United States Supreme Court denied review, this addendum with a challenge to Marion's conviction that is dependent on a different layer of facts as those within the initial motion, was outside of the year. <u>See</u> <u>United</u>

*Conclusion*

For the reasons above, I recommend that the Court deny Marion 28 U.S.C. § 2255 relief.

I further recommend that no certificate of appealability should issue in the event Marion files a

notice of appeal because there is no substantial showing of the denial of a constitutional right

within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate
judge's report or proposed findings or recommended decisions entered pursuant to
28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought,
together with a supporting memorandum, within ten (10) days of being served
with a copy thereof.  A responsive memorandum shall be filed within ten (10)
days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de
novo* review by the district court and to appeal the district court's order.

October 15, 2008.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge

---

States v. Espinoza-Saenz, 235 F.3d 501, 504 -05 (10th Cir. 2000); Davenport v. United States, 217 F.3d 1341,
1346 (11th Cir. 2000).  The Government has not pressed this point in its response even though I granted Marion
leave to supplement his petition and he filed his supplement over a month prior to the Government's response.